SAL'S RESTAURANT, INC., Petitioner

v.

DEPARTMENT OF HEALTH, BU-
REAU OF HEALTH PROMOTION
AND RISK REDUCTION, Respon-
dent.

Commonwealth Court of Pennsylvania.

Argued March 11, 2013.
Decided April 4, 2013.

John D. Lalley, Peckville, for petitioner.

Keith B. Fickel, Senior Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Sal's Restaurant, Inc. (Petitioner) petitions for review of the May 23, 2012 order of the Department of Health (Department) upholding the decision of the Department's Bureau of Health Promotion and Risk Reduction (Bureau) to deny Petitioner's application for exception to the Clean Indoor Air Act (CIAA)[1] for a Type II Drinking Establishment as defined by section 2 of the CIAA, 35 P.S. § 637.2. We affirm.

Salvatore Guarnieri (Guarnieri) is the corporate president and owner of Sal's Restaurant (Sal's), an establishment located at 203 Chestnut Street in Dunmore, Pennsylvania. (Certified Record (C.R.) at 3a, 9a.) Sal's consists of a dining room and a bar area that are connected by a hallway. (C.R. at 14a.) The only bathrooms in Sal's are located in the hallway, so patrons from both the bar area and dining room use these restrooms. (C.R. at 15a.) There is a small set of swinging "saloon" style doors between the bar area and the hallway, and these doors are not floor-to-ceiling. (C.R. at 15a–16a, 47a.) There is a solid floor-to-ceiling door between the dining room and the hallway. There are "No Smoking" signs in the dining room and no one under the age of 18 is permitted in the bar area. (C.R. at 44a, 59a.) The dining room and bar area have separate outdoor entrances, separate kitchen entrances, and separate ventilation systems. (C.R. at 14a.)

The CIAA was signed into law on June 13, 2008, and became effective on September 11, 2008. Section 1 of the CIAA, 35 P.S. § 637.1. On December 15, 2008, Petitioner filed an application with the Bureau pursuant to section 3(c) of the CIAA[2] for an exception to the CIAA's general prohibition against smoking in a public place on the basis that the bar area of Sal's quali-

---

1. Act of June 13, 2008, P.L. 182, 35 P.S. §§ 637.1–637.11.

2. Section 3(c) of the CIAA, 35 P.S. § 637.3(c), provides that in order to be excepted from the CIAA's general prohibition on smoking in a public place, a drinking establishment must submit a letter and verifiable support documentation to the Department.

fied as a Type II Drinking Establishment as defined by the CIAA.[3] The Bureau conducted an on-site inspection of Sal's on February 26, 2009. (C.R. at 14a–16a.)

On June 4, 2009, following a review of Petitioner's application and the inspection, the Bureau denied Petitioner's application for exception because Sal's bar area did not meet all of the requirements of the CIAA. (C.R. at 52a.) Specifically, the Bureau found that the small swinging doors between the bar area and the hallway did not prohibit the flow of smoke from the bar area into the hallway.

On June 10, 2009, Petitioner filed a request for reconsideration. (C.R. at 62a.) The Bureau reviewed Petitioner's request for reconsideration and upheld its denial of the application for an exception on July 8, 2009, again noting that the bar area for which the exception was sought was not enclosed and separate from the eating area. (C.R. at 60a–61a.) Petitioner appealed the denial of the application for exception to the Department on July 10, 2009. On December 6, 2011, the Department notified Petitioner that the record for its appeal had been certified and that it could file additional documents. (C.R. at 63a.) Petitioner submitted supplementary photographs on December 19, 2011, which depicted the layout of Sal's and remedial measures taken by Guarnieri, including the installation of a ceiling-to-floor door between the bar area and hallway.[4] (C.R. at 65a–70a.)

The Department, through the Deputy Secretary for Administration, issued a final agency determination on May 23, 2012, upholding the Bureau's decision denying the application for exception under the CIAA because the bar area was not enclosed. (C.R. at 72a–84a.) Petitioner filed a petition for review to this Court[5] on July 23, 2012, arguing that the dining room and bar area of Sal's were separated, that the Department should have held a hearing, and that the Department should have considered Petitioner's remedial measures.

The CIAA generally prohibits smoking in a public place. Section 3(a) of the CIAA, 35 P.S. § 637.3(a). A public place includes an enclosed area which serves as a commercial establishment or an area where the public is invited or permitted, including a facility which provides food services. Section 2 of the CIAA, 35 P.S. § 637.2. Section 3(b) of the CIAA provides exceptions to the general prohibition against smoking in a public place, and section 3(b)(10) of the CIAA, 35 P.S. § 637.3(b)(10), allows for an exception to permit smoking in a drinking establishment. Section 2 of the CIAA defines a Type II Drinking Establishment as:

> An **enclosed area** within an establishment which, **on the effective date of this section:**

---

3. Section 2 of the CIAA, 35 P.S. § 637.2, includes two definitions for "drinking establishment," one in paragraph one and one in paragraph two. An establishment defined as a drinking establishment under the first paragraph is referred to as a "Type I Drinking Establishment" and an establishment defined as a drinking establishment under the second paragraph is defined as a "Type II Drinking Establishment." Petitioner sought an exception for the bar area of Sal's as a Type II Drinking Establishment.

4. It is unclear from the record when this door was installed, but apparently it was installed sometime after the February 2009 inspection and before the December 2011 submittal of photographs.

5. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

i. Operates pursuant to an eating place retail dispenser's license, restaurant liquor license or retail dispenser's license under the Liquor Code [Act of April 12, 1951 (P.L. 90, No. 21) ];

ii. Is a physically connected or directly adjacent **enclosed area which is separate from the eating area,** has a separate air system and has a separate outside entrance;

iii. Has total annual sales of food sold for on-premises consumption of less than or equal to 20% of the combined gross sales within the permitted smoking area of the establishment; and

iv. Does not permit individuals under 18 years of age.

35 P.S. § 637.2(2)(i-iv) (emphasis added).

Sal's is a public place as defined in the CIAA, and thus is subject to the CIAA's smoking prohibition. (R.R. at 82a.) Petitioner properly applied for an exception to allow smoking in Sal's and established the following facts: Sal's operates pursuant to a valid restaurant liquor license; the bar area has a separate air system and has a separate outside entrance; Sal's has or will have total annual sales of food sold for on-premises consumption of less than or equal to 20% of the sales within the bar area; the bar area does not permit individuals under 18 years of age; and there is proper signage indicating smoking and non-smoking areas in Sal's. (C.R. at 12a–13a.) Thus, the only issue on appeal is whether the bar area of Sal's for which Petitioner seeks an exception as a Type II Drinking Establishment was, on September 11,

2008, an enclosed area which was a physically connected or directly adjacent area separate from the eating area.

Petitioner argues that the Bureau misapplied the facts in determining that the bar area was not enclosed and separated. Specifically, Petitioner argues that the floor-to-ceiling door that separates the dining room from the hallway satisfies the "enclosed area" requirement in the CIAA for a Type II Drinking Establishment.[6]

■ The CIAA does not define an "enclosed area," but in *Moonlite Café v. Department of Health,* 23 A.3d 1111 (Pa. Cmwlth.2011), we sanctioned the Department's interpretation of "enclosed area" in the CIAA to mean "an area enclosed on all sides," and therefore held that a bar area for which a restaurant seeks a Type II Drinking Establishment exception must be surrounded on all sides. In *Moonlite Café,* we concluded that the bar area in the café was not an enclosed area because there was no barrier between the bar area and the hallway connecting the bar area to the restaurant. We further held that it is axiomatic that an establishment applying for a Type II Drinking Establishment exception is entitled to an exception for only that portion of the establishment constituting a Type II Drinking Establishment, i.e., the bar area. *Id.* at 1115. Therefore, to qualify as a Type II Drinking Establishment, the bar area of Sal's must be enclosed on all sides.

■ Furthermore, an exception to a general rule must be construed narrowly.

6. Petitioner also argues that the dining room is fully enclosed by a floor-to-ceiling door, and, therefore, the bar area is entitled to an exception. Petitioner is reversing the requirement in the CIAA that the **bar area** for which an exception is sought must be enclosed by arguing that, because the **dining room** is enclosed, the bar area is enclosed and separate. The floor-to-ceiling door between the dining room and hallway does not enclose the bar area, but only encloses and separates the dining room. The small swinging "saloon" style doors do not fully enclose the bar area and leave a large space open between the bar area and the hallway.

*Rite Care Resources v. Workers' Compensation Appeals Board (Davis)*, 154 Pa. Cmwlth. 336, 623 A.2d 917, 920 (1993). The bar area of Sal's does not include the hallway and bathrooms.[7] The hallway in Sal's where the restrooms are located for all patrons is an area of the establishment not constituting a Type II Drinking Establishment. Thus, the hallway is part of the area from which the bar area must be separated.

■ The bar area of Sal's fails to meet the "enclosed area" requirement for a Type II Drinking Establishment exception because the bar area is not surrounded on all sides. The Department properly applied the plain meaning of the term "enclosed area" to conclude that the small, swinging "saloon" style doors do not fully enclose the bar area and separate it from the hallway. Therefore, the Department did not err by concluding that Petitioner failed to meet the requirements for an exception.

Petitioner alternatively argues that the Department should have conducted an evidentiary hearing to provide Petitioner the opportunity to introduce evidence to prove that the layout of Sal's prevented as much as possible the flow of secondhand smoke into the areas of the restaurant that do not constitute a Type II Drinking Establishment, i.e., the hallway and dining room.

■ However, while section 504 of the Administrative Agency Law, 2 Pa.C.S.

§ 504, mandates that a party receive an opportunity to be heard, that opportunity does not require the equivalent of an evidentiary hearing in every case. *Manor v. Department of Public Welfare*, 796 A.2d 1020 (Pa.Cmwlth.2002). Where there is no issue of fact to be decided, an evidentiary hearing is unnecessary. *See Gruff v. Department of State*, 913 A.2d 1008 (Pa. Cmwlth.2006) (holding that an evidentiary hearing is not required if there are no factual issues in dispute).

Here, the only issue in dispute is whether the bar area of Sal's was an enclosed area separate from the eating area on September 11, 2008, the effective date of the CIAA. Section 1 of the CIAA, 35 P.S. § 637.1; *House of Leung v. Department of Health*, 38 A.3d 986 (Pa.Cmwlth.2012). All of the material facts were gathered from Petitioner's application and the Bureau's investigator during her on-site inspection in February 2009, and these facts are not disputed.

■ Whether the layout of Sal's prevented as much secondhand smoke from flowing into the hallway and dining room as possible is irrelevant because the only issue is whether Sal's bar area is fully enclosed. Petitioner does not dispute the material facts, but rather the conclusions of law to be drawn from these facts. Therefore, an evidentiary hearing was not required in this case, and the Department did not err in not conducting one.[8]

---

7. The hallway does not warrant inclusion with the bar area as a Type II Drinking Establishment. The Department is correct in its assertion that the hallway must be included with the eating area as the general restaurant, from which the bar area would require exclusion or separation. To establish that the hallway and bathrooms are part of the bar area, Petitioner would have had to argue that no patrons under the age of 18 are permitted in the hallway, meaning they would not be permitted to use the bathrooms—a difficult premise to imagine.

8. Petitioner also argues that it should have had the opportunity to present evidence regarding Guarnieri's conversations with the Bureau's inspector and other groups who inspected his premises, such as the American Cancer Society. Guarnieri's conversations with the Bureau's inspector and other groups are irrelevant and have no bearing on the

Petitioner lastly argues that because the legislative goals of the CIAA are to protect citizens from secondhand smoke when in a non-smoking area and to isolate those areas of an establishment which constitute a Type II Drinking Establishment in order to prevent the flow of secondhand smoke into other areas,[9] the language in the statute mandating that the Type II Drinking Establishment exception requirements must be in place "on the effective date of this section," September 11, 2008, is contrary to the intent of the General Assembly in enacting the CIAA and the spirit of the law. Petitioner therefore argues that this Court should consider the remedial measures that Petitioner took after the Bureau's February 2009 inspection—mainly the installation of a solid door between the bar area and hallway in Sal's.

However, we rejected an argument identical to Petitioner's argument in *House of Leung,* where we held that in order for an establishment to qualify for an exception as a Type II Drinking Establishment under section 2 of the CIAA, the designated area of the establishment must have satisfied the requirements by September 11, 2008. *House of Leung,* 38 A.3d at 991–92. In doing so, we explained that this Court may not ignore the CIAA's compliance deadline for Type II Drinking Establishment exception requirements. *Id.* at 991. Accordingly, neither the Department nor this Court can consider Petitioner's remedial measures taken after the effective date of the statute; therefore, the Department did not err by not considering Petitioner's remedial measures taken after September 11, 2008.

Accordingly, we affirm.

---

legal issue of whether the bar area of Sal's complied with the CIAA.

9. *See Moonlite Café,* 23 A.3d at 1115, and *House of Leung,* 38 A.3d at 989 (stating that it is clear that the General Assembly intended to isolate those areas of an establishment constituting a Type II Drinking Establishment so as to prevent as much as possible the flow of secondhand smoke into those areas of the establishment not constituting a Type II Drinking Establishment).

***ORDER***

AND NOW, this 4th day of April, 2013, the May 23, 2012 order of the Department of Health, Bureau of Health Promotion and Risk Reduction, is hereby affirmed.