IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Chris Jazz Christian Academy, | : | |
| Petitioner | : | |
| | : | No. 295 C.D. 2020 |
| v. | : | |
| | : | Submitted: October 23, 2020 |
| Department of Human Services, | : | |
| Respondent | : | |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                  FILED:  January 15, 2021

Chris Jazz Christian Academy (Academy) petitions for review of the February 5, 2020 order of the Chief Administrative Law Judge for the Department of Human Services (Department), Bureau of Hearings and Appeals (Bureau), adopting in its entirety the adjudication and recommendation of an Administrative Law Judge (ALJ) denying the Academy's appeal from the Department's decision to refuse to renew the Academy's first provisional certificate of compliance to operate a group child day care home.

The Academy was a group child day care home[1] located at 3014 North 24th Street, Philadelphia, Pennsylvania, which was owned and operated by Robin Hall

---

[1] A "group child day care home" is defined as "[t]he premises in which care is provided at one time for more than six but fewer than 16 older school-age level children or more than six but fewer **(Footnote continued on next page…)**

(Owner), pursuant to a provisional certificate of compliance.[2] (Certified Record (C.R.) at 8, 34-35.) On December 6, 2018, a Department certification representative conducted a renewal inspection of the facility. (C.R. at 12.) During the inspection, the Department representative noted multiple regulatory violations related to, *inter alia*, liability insurance; the availability of certificates of compliance and applicable regulations; age and training of staff; suitability of persons in the facility; general requirements for facility persons; ratio requirements; water and refrigeration; first-aid kits; fire drills; rest equipment; the supervision of children; agreements with parents; emergency contact information; child health information; adult health information; meals; pick-up and drop-off points; adult child records; and the content of adult records. (C.R. at 12-13.)

The Department notified Owner of the violations that were discovered during its inspection on December 6, 2018, and requested the Academy's plans to correct the cited violations. (C.R. at 13.) The Academy submitted plans on January 4, 2019, and January 31, 2019, which the Department accepted. (C.R. at 13.) The Department issued a first provisional certificate of compliance effective from December 27, 2018, through June 27, 2019. (C.R. at 13, 34-35.)

On May 16, 2019, a certification representative conducted a second renewal inspection of the facility. (C.R. at 13.) During this inspection, the Department's representatives again noted multiple regulatory violations, regarding, *inter alia*, pertinent laws and regulations; age and training of staff; suitability of persons

---

than 13 children of another age level who are unrelated to the operator. The term includes a facility located in a residence or another premises." 55 Pa. Code § 3280.4.

[2] "A child day care license is referred to as a certificate of compliance." *Musheno v. Department of Public Welfare*, 829 A.2d 1228, 1229 (Pa. Cmwlth. 2003). The Department's regulations provide for the issuance of a provisional certificate of compliance "if the facility or agency is in substantial, but not complete, compliance" with applicable regulations. 55 Pa. Code § 20.54(a).

in the facility; general requirements for facility persons; protective electrical covers; water; first-aid kits; building surface requirements; paint; child health information; adult health information; meals; food groups; and the content of adult records. (C.R. at 13-14.) The Department notified Owner of the violations as a result of the May 16, 2019 inspection and requested the Academy's plans to correct the cited violations. (C.R. at 14.) On June 3, 2019, the Department accepted the Academy's plans of correction for all violations except Violation #4, relating to the suitability of persons in the facility. (C.R. at 21-22.)

On July 8, 2019, the Department issued a notice of refusal to renew the Academy's first provisional certificate of compliance to operate a group child day care home. (C.R. at 12-16.) The notice cited the Academy's repeat violations of certain regulations including those related to age and training of staff; the suitability of persons in the facility; general requirements for facility persons; water; first-aid kits; child health information; adult health information; and meals. (C.R. at 14.) The notice further explained:

> The repeated regulatory noncompliance, as described above, constitutes a failure to comply with the Human Services Code[3] and the Department's regulations and requirements, failure to comply with acceptable plans to correct noncompliance items, and gross incompetence, negligence, and misconduct in operating the facility. Each of these conditions, in themselves, constitutes sufficient legal grounds to refuse to renew your first provisional certificate of compliance to operate a group child [day] care home.

(C.R. at 14.)

By letter dated July 12, 2019, Owner wrote "an approval letter to prove [her] Certificate of Compliance." (C.R. at 10.) Therein, Owner explained the

---

[3] Human Services Code (formerly the Public Welfare Code), Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101-1503.

violations and corrective measures taken since the last inspection. (C.R. at 10-11.) It was not signed by Owner. (C.R. at 11.) The Department treated this as an appeal of the July 8, 2019 notice, and the matter was assigned to an ALJ. (C.R. at 8, 9.) The Department notified the Academy that the Bureau would schedule a hearing on the appeal. (C.R. at 9.)

Instead, on July 30, 2019, the Department issued a Rule to Show Cause directing the Academy to address why the appeal should not be dismissed for lack of jurisdiction given Owner's July 12, 2019 letter, which appeared to concede that at least some of the violations had occurred. (C.R. at 47.) Citing Section 1026(b) of the Human Services Code, 62 P.S. § 1026(b), the Rule to Show Cause stated that "the Department may refuse to issue a license for *any* violation of or noncompliance with the provisions of the act or regulations." (C.R. at 47 (emphasis in original).) Based on the Department's ability to revoke or deny a license based on a single regulatory violation, and Owner's admissions that the Academy violated several regulations, the Department stated that the appeal raised no issues requiring a hearing or further proceedings. (C.R. at 47.) The Rule also noted that the typed appeal letter did not have Owner's signature in violation of the General Rules of Administrative Practice and Procedure (GRAPP), 1 Pa. Code Part II. The Rule directed the Academy to

> respond to this Rule within thirty (30) days by filing a written response, with signature, that specifically addresses the above concerns including a concise explanation detailing the basis for the argument that the appeal should not be dismissed. The response must provide citation to any relevant statutory, regulatory[,] or decisional authority in support of the argument. *Failure to set forth a legal argument that would warrant a hearing may be deemed a basis for the entry of a final order without a hearing (unless a hearing is otherwise required by statute) on the grounds that the response has raised no issues requiring further proceedings.* Similarly, failure to submit a signed response

4

within the time allowed may be deemed in default and relevant facts stated in the Rule to Show Cause may be deemed admissions pursuant to 1 Pa. Code § 35.37. *Further, the [Academy's] failure to timely respond in writing will result in the dismissal of the above-captioned appeal.*

(C.R. at 47 (emphasis added).)

The Department did not receive a response from the Academy. On October 8, 2019, the ALJ recommended dismissal of the Academy's appeal due to lack of jurisdiction and a filing defect. The ALJ found that Owner's July 12, 2019 letter admitted to multiple regulatory violations. (ALJ Adjudication, Findings of Fact (F.F.) No. 3; C.R. at 52.) She concluded that the appeal raised no issues requiring a hearing or further proceedings given the Academy's concessions and the Department's authority to refuse renewal of a provisional certificate of compliance for one violation of the applicable regulations. (C.R. at 53.) Further, Owner's failure to submit a signed copy of the July 12, 2019 letter constituted a filing defect. (C.R. at 52.)

The ALJ also noted that the Department received no response to the Rule to Show Cause by the Academy even though it was mailed to the Academy's address of record and was not returned as undeliverable. (ALJ Adjudication, F.F. Nos. 9-10; C.R. at 53.) The ALJ concluded that the Academy's failure to respond to the Rule to Show Cause after being afforded adequate time to do so was an admission by the Academy that the Department lacked jurisdiction. (C.R. at 54.) She reasoned that "[s]ince [the Academy] failed to respond and failed to assert that it was [the Academy's] desire that the appeal continue, it would appear that [the Academy] is admitting that the [Department] does not have jurisdiction in this matter, warranting dismissal of the appeal." (C.R. at 53.)

By order dated February 5, 2020, the Bureau's Chief Administrative Law Judge adopted the ALJ's adjudication and recommendation in its entirety. (C.R. at 50.)

5

On February 18, 2020, the Academy timely filed an application/petition for reconsideration, asserting that the Bureau should have held a hearing on the Academy's appeal, and simultaneously filed a *pro se* letter with this Court indicating its intent to appeal the February 5, 2020 order. (C.R. at 56-61.) The Department denied the Academy's application/petition for reconsideration by order dated February 25, 2020. (C.R. at 64.) The Academy, through counsel, thereafter filed a timely petition for review with this Court.

On appeal,[4] the Academy argues that the Department erred by adopting the ALJ's recommendation to dismiss the appeal based on a lack of jurisdiction and filing defect. In support, the Academy contends that the Department erred in finding that the Academy did not respond to the Rule to Show Cause. The Academy further contends that the Department erred in relying on the mailbox rule to support its presumption that the Academy received the Rule to Show Cause. The Academy also argues that the Department erred in failing to schedule a hearing on its appeal and refusing to renew its provisional certificate of compliance.

In addition to the merits of the Academy's appeal, this Court must also rule on the Department's application to strike the Academy's brief.[5] The Department argues that the Academy's brief is defective under the Pennsylvania Rules of Appellate Procedure. First, the Department contends that the Academy's Statement of the Case is defective because it is argumentative and does not contain citations to the record. Second, the Department argues that the Academy has not divided its Argument section

---

[4] Our scope of review in an appeal of an adjudication of the Department is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Lil Shining Stars, Inc. v. Department of Human Services*, 140 A.3d 83, 92 n.5 (Pa. Cmwlth. 2016).

[5] On September 24, 2019, this Court ordered that the application to strike be decided at the same time as the merits of the appeal. The Academy did not file an answer to the application to strike.

6

into six respective parts despite presenting six questions for review in its Statement of the Questions Involved. Based on these defects, the Department asks this Court to strike the Academy's brief and order it to file an amended brief with appropriate citations to the record and appropriately identified arguments.

Rule 2101 of the Pennsylvania Rules of Appellate Procedure provides as follows:

> Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, *if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.*

Pa. R.A.P. 2101 (emphasis added). Pursuant to Rule 2117(a)(4) of the Pennsylvania Rules of Appellate Procedure, a petitioner's statement of the case must be comprised of facts and citations to the record. Pa. R.A.P. 2117(a)(4). Additionally, the appellate rules require that a petitioner's argument section be "divided into as many parts as there are questions to be argued[.]" Pa. R.A.P. 2119(a).

It is well established that "any party to an appeal before this Court [that] fails to strictly comply with all provisions of the Pennsylvania Rules of Appellate Procedure . . . is in peril of having its appeal dismissed; nevertheless, the Court will consider the defect and whether meaningful review has been precluded." *Union Township v. Ethan Michael, Inc.*, 979 A.2d 431, 436 (Pa. Cmwlth. 2009). Our Supreme Court has cautioned that "[t]he extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules and when the moving party has suffered no prejudice." *Stout v. Universal Underwriters Insurance Co.*, 421 A.2d 1047, 1049 (Pa. 1980). Despite the Academy's failure to strictly comply with the Pennsylvania Rules

7

of Appellate Procedure, its position is clear. The Academy's defects do not preclude meaningful appellate review, and there is no indication that the Department has suffered any prejudice.[6] Accordingly, the Department's application to strike is denied.

Turning to the merits, we first address the Academy's argument that the Department erred in failing to schedule a hearing on its appeal. We agree with the Academy. Section 504 of the Administrative Agency Law, 2 Pa. C.S. §504, requires that a party receive notice of a hearing and the opportunity to be heard. However, a hearing is not necessarily required where, for example, there are no factual issues in dispute. *Sal's Restaurant, Inc. v. Department of Health, Bureau of Health Promotion & Risk Reduction*, 67 A.3d 57, 61 (Pa. Cmwlth. 2013).

Here, although the Academy filed a timely appeal of the Department's July 8, 2019 letter, the ALJ issued a Rule to Show Cause stating that there were no disputed facts given the Academy's admissions of certain regulatory violations, rather than scheduling a hearing on the Academy's appeal. Indeed, we acknowledge that Section 1026(b)(1) and (4) of the Human Services Code requires the Department to revoke a license for the violation of or noncompliance with the Code's provisions or accompanying regulations or for "[g]ross incompetence, negligence[,] or misconduct in operating the facility[.]" 62 P.S. §1026(b)(1), (4). Moreover, this Court has held that even one violation of the Department's regulations is sufficient to refuse or revoke a license. *Altagracia De Pena Family Day Care v. Department of Public Welfare*, 943 A.2d 353, 356 (Pa. Cmwlth. 2007) ("It is well settled that one regulatory violation is

---

[6] As noted, parties that file defective briefs or otherwise fail to comply with the Pennsylvania Rules of Appellate Procedure typically risk having their cases dismissed. In this matter, however, the Department has asked this Court to grant the Academy leave to amend its brief. Even though the Department asks this Court to grant the Academy leave to amend its brief, we note that the Academy did not itself request leave to amend its brief or otherwise respond to the Department's application to strike. Because we find that the Academy's arguments in its brief are clear, despite the brief's defects, we decline to order the Academy to file an amended brief at this juncture.

8

sufficient to revoke a license issued by [the Department,] or . . . a registration certificate . . . [.]").

However, we also acknowledge that the Department has held hearings under similar circumstances where the appeal contained language explaining regulatory violations or corrective action taken since the date of the inspection. For example, in *Tullis's Little Lamb Daycare v. Department of Human Services* (Pa. Cmwlth., No. 164 C.D. 2018, filed March 6, 2019) (unreported),[7] the Department revoked a day care's first provisional certificate of compliance for failure to comply with the applicable regulations. In its appeal, the day care did not dispute that the violations had occurred. Instead, the day care explained that the violations had since been remedied and proposed a plan to improve operations going forward. The ALJ held a hearing on the day care's appeal, at which the Department's certification representatives testified and the day care's director was given the chance to explain the violations.

Likewise, in many other cases, the Department has held hearings on day care and learning center appeals despite the fact that there was no dispute that the regulatory violations occurred. These appeals referenced corrections made, future plans of action, or challenges to the consequences of the entities' violations, *i.e.*, the revocation or refusal to renew the entities' licenses or provisional certificates. *See Lil Shining Stars, Inc. v. Department of Human Services*, 140 A.3d 83, 92 n.5 (Pa. Cmwlth. 2016); *Aa to Zz Childcare & Learning Center v. Department of Human Services* (Pa. Cmwlth., No. 651 C.D. 2018, filed May 1, 2019); *Momma D's Day Care Center, LLC v. Department of Public Welfare* (Pa. Cmwlth., No. 2009 C.D. 2014, filed September

---

[7] We cite *Tullis's Little Lamb Daycare* for its persuasive value in accordance with section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

9

23, 2015). It is unclear why the Department did not believe the Academy deserved the same treatment.[8]

We conclude that the Department's actions are inconsistent with the basic notions of due process, especially given that the Academy filed a timely appeal from the Department's July 8, 2019 letter and was notified by the Department that a hearing would be scheduled. Accordingly, we vacate the Bureau's order dismissing the

---

[8] The ALJ also determined that Owner's failure to submit a signed appeal constituted a jurisdictional defect. Section 33.11 of the General Rules of Administrative Practice and Procedure (GRAPP), requires that "the original copy of each pleading, submittal or other document shall be signed in ink by the party in interest, or by his or its attorney[.]" 1 Pa. Code § 33.11. The Department requires legal entities to comply with this provision in section 20.82(a) of its own regulations. 55 Pa. Code § 20.82.

Notwithstanding the applicability of section 33.11, section 504 of the Administrative Agency Law also applies here, providing that "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa. C.S. § 504. In this case, the Academy filed its appeal without a written signature. However, the Academy had a legal right to appeal the Department's decision not to renew the provisional certificate of compliance. *See* 55 Pa. Code § 20.82.

The facts of this case also indicate that Owner attempted to comply with section 33.11 of GRAPP. In a signed request for reconsideration, Owner stated that she was informed, by a Department representative, that she needed to submit a signed appeal. (C.R. at 56.) Although vague, Owner stated that she "turned [her] letters in." (C.R. at 57.) The record also contains a letter wherein Owner writes: "I would like to request an appeal to have my provisional certificate of compliance renewed. I sent in an appeal to Jamila Dashiell. Ms. Dashiell requested that I send in another appeal because it [lacked] a signature. I have complied, but Ms. Dashiell hasn't received the new appeal." (C.R. at 58.) The Department has not contested this fact and does not address it in its appellate brief.

In any event, it is not clear whether the Department relied solely on the lack of signature in dismissing the case or because the Academy's appeal failed to raise any issues. The ALJ seemed to conflate these issues in her discussion. Our review has not revealed any cases where the mere failure to sign an appeal of the Department's decision not to renew a first provisional certificate of compliance results in a jurisdictional defect that would deprive the Department of its ability to review a timely filed appeal in a case in which it clearly has jurisdiction over the subject matter.

Academy's appeal and remand for the Bureau to hold the hearing that the Academy seeks.[9]

_____
PATRICIA A. McCULLOUGH, Judge

[9] Given our disposition in this matter, we need not address the Academy's remaining arguments.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chris Jazz Christian Academy,      :
                 Petitioner      :
                                :  No.  295 C.D. 2020
              v.               :
                                :
Department of Human Services,     :
                 Respondent  :

## ***ORDER***

AND NOW, this 15th day of January, 2021, the order of the Chief Administrative Law Judge for the Department of Human Services (Department), Bureau of Hearings and Appeals, dated February 5, 2020, is hereby VACATED, and this matter is REMANDED for the Department to hold a hearing on Chris Jazz Christian Academy's (the Academy) appeal in accordance with the foregoing opinion. The Department's application to strike the Academy's brief is DENIED.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge